UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY REDDING,<br><br>        Plaintiff,<br><br>    v.<br><br>STEPHANIE CLANDENIN, et al.,<br><br>        Defendants. | Case No. 1:22-cv-01234-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S FOURTEENTH AMENDMENT CONDITIONS OF CONFINEMENT CLAIM AGAINST DEFENDANTS CLANDENIN AND PRICE, AND THAT ALL OTHER CLAIMS BE DISMISSED<br><br>(ECF No. 7)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS<br><br>ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE |

      Billy Redding ("Plaintiff") is a civil detainee proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the complaint commencing this action on September 28, 2022.  (ECF No. 1).

      On February 2, 2023, the Court screened Plaintiff's complaint.  (ECF No. 6).  The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint; b. Notify the Court in writing that he does not want to file an amended complaint and instead wants to proceed only on his Fourteenth Amendment conditions of confinement claim against defendants Clandenin

and Price; or c. Notify the Court in writing that he wants to stand on his complaint." (Id. at 13). On February 27, 2023, Plaintiff filed a First Amended Complaint (ECF No. 7), which is now before this Court for screening.

The Court has reviewed the First Amended Complaint. Plaintiff alleges that he has reached Module 4 of the Sex Offender Treatment Program at the Department of State Hospitals, and the Department of State Hospitals has deemed him suitable for the Conditional Release Program. However, he is being denied individualized and appropriate "in-community" treatment. Additionally, he is still being subjected to the same conditions as detainees who have not been deemed suitable for the Conditional Release Program, and many of these conditions are as restrictive, or more restrictive, than the conditions faced by prisoners.

For the reasons described below, the Court will recommend that this action proceed on Plaintiff's Fourteenth Amendment conditions of confinement claim against defendants Clandenin and Price. The Court will also recommend that all other claims be dismissed.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I.     SCREENING REQUIREMENT

As Plaintiff is proceeding *in forma pauperis* (ECF No. 4), the Court screens the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting

1   this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts
2   "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d
3   677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted).  Additionally, a
4   plaintiff's legal conclusions are not accepted as true.  Iqbal, 556 U.S. at 678.

5   Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal
6   pleadings drafted by lawyers."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that
7   *pro se* complaints should continue to be liberally construed after Iqbal).

### II.   SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff alleges as follows in his complaint:

The incidents occurred at Department of State Hospitals, Coalinga ("DSH Coalinga"). As defendants, Plaintiff names Stephanie Clandenin, the Director of the Department of State Hospitals, and Brandon Price, the Executive Director of DSH Coalinga. Both defendants are sued in their official capacity only.

Plaintiff has been a Department of State Hospitals ("DSH") civil detainee since approximately May 14, 2002.  Plaintiff was ordered civilly detained, and later civilly committed, pursuant to California's Sexually Violent Predator Act ("SVPA").  Subsequently, Plaintiff was ordered to remain civilly detained by the DSH for two purposes: (1) protection of the public; and (2) treatment the state deemed was required to ensure he was rehabilitated such that he will no longer be a danger to the public.

On or about June 18, 2006, Plaintiff began the DSH's "Sex Offender Treatment Program" ("SOTP").

In order for a civilly committed SVPA detainee to reach SOTP Module 4, the DSH Coalinga Medical Director, the DSH Coalinga Chief of Psychology, the Director of the SOTP (i.e., the most senior treatment supervisors within the facility), and a representative of the DSH's Conditional Release Program ("CONREP") are required to conduct a thorough assessment of the detainee.  Said assessment includes, but is not limited to, reviewing the SVPA detainee's mental health charts, consulting with his treatment providers, reviewing his treatment work, and interviewing said detainee.  For the SVPA detainee to successfully be

1   advanced to SOTP Module 4, these supervisors must unanimously deem the SVPA detainee
2   suitable for "community reintegration."
3         On or about September 23, 2020, the DSH Coalinga Medical Director, the DSH
4   Coalinga Chief of Psychology, the Director of the SOTP, and a representative of the DSH's
5   CONREP unanimously deemed Plaintiff to be suitable for advancement to "Module 4:
6   Conditional Release through the Liberty Conditional Release Program (CONREP)" of the
7   DSH's SOTP.
8         Defendants are legally responsible, in whole or in part, for the operation of DSH
9   Coalinga and for the health and safety of the persons residing in said facility.
10        DSH Coalinga provides care and mental health treatment to psychiatric patients
11  committed civilly, or civilly detained, pursuant to the SVPA.
12        Defendants are obligated to operate DSH Coalinga in a manner that does not infringe
13  upon the federal rights, as protected by the Fourteenth Amendment to the Constitution of the
14  United States, of individuals confined to DSH Coalinga.
15        Defendant Clandenin, as the most senior supervisor, administrator, and policymaker
16  within the DSH, endorsed the DSH's SVPA treatment program entitled SOTP.  The SOTP is
17  described in detail within a document entitled "Sex Offender Treatment Program (SOTP)
18  Program Description," which was last revised in 2016.  This document outlines the rationale of
19  the SOTP, and the manner within which the SOTP is to be administered by DSH facilities,
20  including DSH Coalinga.
21        Defendant Clandenin has the authority to alter the manner within which all treatment
22  within DSH facilities is administered, including the SOTP.
23        The "Sex Offender Treatment Program (SOTP) Program Description" notes the
24  treatment program "incorporates components of the Self-Regulation/Better Life (SR/BL)
25  models and complies with Risk-Need-Responsivity (RNR) principles.  These models are
26  integrated into a combined approach to strengthen an individual's self-regulation skills and to
27  prepare him for a better life free of sexual offending.  The fundamental goal of the program is
28  for the individual to acquire pro-social skills and to prevent recurrence of sexual offending."

1    The "Sex Offender Treatment Program (SOTP) Program Description" notes the that the Risk-Needs-Responsibility principles involve three components: (1) the risk principle; (2) the need principle; and (3) the responsibility principle.

Defendant Clandenin placed Dr. Deidre D'Orazio in the position of DSH SVPA Conditional Release Program Liaison Supervisor.  Dr. D'Orazio has attended forums at DSH Coalinga, which Plaintiff assisted in administering through his involvement with DSH Coalinga's "Patients Collaborative Leadership Skills" ("PCLS") group.  At said forums, Dr. D'Orazio noted that once DSH's SVPA patients reach SOTP Module 4, their treatment needs require them to practice their skills within the community under the supervision of DSH clinicians to ensure that the skills they have learned from SOTP Modules 1 to 3 have been successfully internalized and to ensure said patients address any issues that could only become apparent to said DSH clinicians through in-community practice of said skills.

Consistent with defendant Clandenin's Risk-Needs-Responsivity principles, the Sex Offender Treatment Program (SOTP) Program Description," and Dr. D'Orazio's statements, the SOTP is designed in a manner wherein as SVPA DSH patients progress through the treatment program, they will have learned skills needed to address their "Dynamic Risk Factors," where ultimately their treatment needs require them to practice said skills within the community.  Further, at the point they reach SOTP Module 4, said DSH SVPA patients' treatment needs involve DSH treatment providers addressing any issues they discover through the patients' behavior within the community.  Finally, SOTP Module 4 patients require in-community practice of their skills; DSH treatment providers monitoring said in-community practice; and DSH treatment providers responding to any issues that arise through said in-community practice towards treatment completion (i.e., DSH deeming no further treatment is needed).

The Risk-Needs- Responsivity principles require in-community practice once the DSH patient has reached SOTP Module 4 to be consistent with his individualized treatment need. The risk principle is such where those supervisors (whom defendant Clandenin has put in place to administer her SVPA treatment program) have deemed that DSH patients who have reached

1  SOTP Module 4 can be safely treated within the community.  The needs principle is only
2  satisfied if SOTP Module 4 patients are given the opportunity to practice their skills within the
3  community.  The responsivity principle is only satisfied if DSH treatment providers are given
4  the opportunity to monitor how detainees are managing their "Dynamic Risk Factors" within
5  the community, gauge whether there is any further fine tuning that is required, and respond
6  accordingly by providing individualized treatment to address those identified issues.
7       Defendant Clandenin and Dr. D'Orazio have outlined the fact that the DSH's SVPA
8  treatment program requires patients to complete this portion of the SOTP, which requires in-
9  community practice, so that they can show their treatment providers they have successfully
10 internalized the skills needed to be unconditionally discharged from SVPA civil commitment.
11 Absent in-community practice, patients do not have a reasonable opportunity to be deemed
12 "cured" so that they can be released completely from SVPA civil commitment.
13      In-community engagement of civilly committed mental health patients has been used by
14 the state via "Day Passes."
15      Defendant Clandenin is capable of creating policies that ensure that SVPA DSH SOTP
16 Module 4 inpatients are provided with "Day Passes" that would permit carefully controlled in-
17 community engagement.  Once patients have successfully demonstrated treatment completion,
18 treatment supervisors could recommend the unconditional discharge of that patient from SVPA
19 civil commitment.  However, defendant Clandenin has not created these policies.  This failure
20 results in Plaintiff being denied treatment that provides him with a realistic opportunity to be
21 "cured" and released from his civil commitment.
22      Defendant Clandenin is aware, or should be aware, that in order to satisfy the
23 Fourteenth Amendment, she is required to create policies that ensure that Plaintiff is provided
24 with appropriate individualized treatment that affords him with a realistic opportunity to be
25 cured and released from his civil commitment.
26      Defendant Clandenin failed to create policies that require Plaintiff to be provided with
27 individualized and appropriate treatment.  This failure prevents Plaintiff from meeting the
28 statutory criteria for release from SPVA civil commitment.  Additionally, this failure results in

the nature and duration of Plaintiff's continued confinement not bearing a reasonable relation to one of the two purposes for which Plaintiff was committed, namely being provided with appropriate mental health treatment.

    Defendants Clandenin and Price have deemed that DSH Coalinga's restrictive conditions of confinement are required to manage those SVPA detainees who, unlike Plaintiff, have not been rehabilitated sufficiently to have completed the inpatient SVPA treatment program. Such restrictive conditions include, but are not limited to: detainees being prohibited from possessing cellphones, which is a restriction that is identical to that experienced by California Department of Corrections and Rehabilitation ("CDCR") prisoners; detainees being prohibited from possessing personal computers, which is a restriction that is identical to that experienced by CDCR prisoners; detainees being prohibited from having any access to the internet, which is a restriction that is more restrictive than that experienced by CDCR prisoners and California's federal prisoners who are permitted limited internet access; detainees being prohibited from possessing any devices capable of accessing the internet, which is a restriction that is more restrictive than that experienced by CDCR prisoners who are permitted tablets that have internet access; detainees being prohibited from having "Day Passes" wherein they are able to leave the DSH facility grounds, either with or without supervision, during the day, which is a restriction that is identical to that experienced by CDCR prisoners; detainees being prohibited from possessing their own vitamins and medication, which is a restriction that is more restrictive than that experienced by CDCR prisoners, who are permitted to purchase vitamins and to have "keep on person" medications; detainees being prohibited from having privacy, a restriction that is identical to that experienced by CDCR prisoners; detainees being prohibited from having adequate access to law library material, which is a restriction that is identical to that experienced by CDCR prisoners and more restrictive than that experienced by California's federal prisoners; and detainees being prohibited from having a personal television with either cable or satellite television access, a restriction that is more restrictive than that experienced by CDCR prisoners.

    Defendants are aware, or should be aware, that the Fourteenth Amendment prohibits

Plaintiff from being subjected to punishment while in their custody.

Defendants are aware, or should be aware, that even if the highly restrictive conditions described by Plaintiff may have been rational prior to Plaintiff having been deemed by DSH to be rehabilitated, none of those highly restrictive conditions are currently appropriate for Plaintiff now that he has reached SOTP Module 4. Defendants play a significant role in administering the DSH SOTP. Specifically, Defendants are aware, or should be aware, that none of the restrictive conditions exist, and are thus deemed necessary, within DSH's SVPA conditional release program administered by defendant Clandenin. Defendants are aware, or should be aware, that not one SVPA detainee who has ever been released into the SVPA CONREP outpatient treatment program has ever been convicted of a sexually violent offense subsequent to being released into the program.

Defendants are aware, or should be aware, that transitional housing within the secure boundaries of the DSH, with conditions that mirror those afforded to SVPA DSH outpatients and thus include none of the prison-like conditions described by Plaintiff, would be a reasonable and less harsh method of confining Plaintiff while he awaits court-ordered release. The state provides DSH with over $240,000 per year for the care of Plaintiff, and for a small fraction of funds the DSH could: provide a small inexpensive mobile home on DSH property for Plaintiff to live in; install a GPS ankle bracelet on Plaintiff; have Plaintiff's ankle bracelet monitored; have DSH psychiatric technicians communicate with Plaintiff's employers and otherwise supervise Plaintiff during his Day Passes; have cable or satellite television installed for Plaintiff's use; provide Plaintiff with access to the DSH's internet provider; provide Plaintiff with home appliances; and otherwise provide for Plaintiff to live a normal life with the exception of his residing on DSH grounds, and subject to conditions of supervision that are not excessively restrictive.

In his first claim, Plaintiff alleges that defendant Clandenin's failure to provide adequate treatment violates the Due Process Clause of the Fourteenth Amendment. In his second claim Plaintiff alleges that Defendants' failure to provide non-punitive housing

\\\

arrangements violates the Due Process Clause of the Fourteenth Amendment.

### III. ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

#### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City

of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

"A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive

relief." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013) (citation omitted).

### B. Claim 1 – Fourteenth Amendment Medical Care

"Involuntarily committed patients in state mental health hospitals have a Fourteenth Amendment due process right to be provided safe conditions by the hospital administrators.... [W]hether a hospital administrator has violated a patient's constitutional rights is determined by whether the administrator's conduct diverges from that of a reasonable professional. In other words, a decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment. This standard has been referred to as the *Youngberg* professional judgment standard. The *Youngberg* standard differs from the deliberate indifference standard used in Eighth Amendment cruel and unusual punishment cases, in that [p]ersons who have been involuntarily committed are entitled to *more considerate treatment and conditions of confinement* than criminals whose conditions of confinement are designed to punish." Mitchell v. Washington, 818 F.3d 436, 443 (9th Cir. 2016) (alterations in original) (citations and internal quotation marks omitted). "[C]ourts must restrict their inquiry to two questions: (1) whether the decisionmaker is a qualified professional entitled to deference, and (2) whether the decision reflects a conscious indifference amounting to gross negligence, so as to demonstrate that the decision was not based upon professional judgment." Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992).

Additionally, "the Fourteenth Amendment Due Process Clause requires states to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released." Sharp v. Weston, 233 F.3d 1166, 1172 (9th Cir. 2000).

Plaintiff alleges that on or about September 23, 2020, the DSH Coalinga Medical Director, the DSH Coalinga Chief of Psychology, the Director of the SOTP, and a representative of the DSH's CONREP unanimously deemed Plaintiff to be suitable for

advancement to "Module 4: Conditional Release through the Liberty Conditional Release Program (CONREP) of the DSH's SOTP." Additionally, Dr. Deidre D'Orazio, the DSH SVPA Conditional Release Program Liaison Supervisor, has stated that once DSH's SVPA patients reach SOTP Module 4, their treatment needs require them to practice their skills within the community under the supervision of DSH clinicians to ensure that the skills they have learned from SOTP Modules 1 to 3 have been successfully internalized and to ensure said patients address any issues that could only become apparent to said DSH clinicians through in-community practice of said skills.

Plaintiff further alleges that defendant Clandenin is capable of creating policies that ensure that SVPA DSH SOTP Module 4 inpatients are provided with "Day Passes" that would permit carefully controlled in-community engagement. Once patients have successfully demonstrated treatment completion, treatment supervisors could recommend the unconditional discharge of that patient from SVPA civil commitment. However, defendant Clandenin has not created these policies. This failure results in Plaintiff being denied treatment that provides him with a realistic opportunity to be "cured" and released from his civil commitment.

The Court finds that Plaintiff fails to state a claim based on failure to provide adequate medical care. Plaintiff alleges that he has received treatment at the DSH, which culminated in Plaintiff being deemed suitable for the Conditional Release Program. Plaintiff further alleges that he now needs to receive "in-community" treatment, but he does not sufficiently allege that defendant Clandenin, or anyone at the DSH, is responsible for conditionally releasing him.

Plaintiff attaches the Sex Offender Treatment Program Description to his complaint. According to the description, "[i]f the individual has met all of the criteria, the panel will recommend the patient for *Community Reintegration*." (ECF No. 7, pgs. 36-37). While it does appear that staff at the DSH is responsible for treatment once conditional release occurs, nothing in the description suggests that DSH staff is responsible for conditionally releasing detainees. In fact, the description refers to court-ordered release. (ECF No. 7, p. 37) ("CONREP is responsible for supervising and treating conditionally released SVP patients court-ordered into the community…. Conditionally released SVP patients must comply with

court-ordered terms and conditions."). Additionally, Plaintiff cites to California Welfare and Institutions Code § 6608, which states that a petition for conditional release is to be brought before a court (not the DSH or its staff). Cal. Welf. & Inst. Code § 6608(a) ("A person who has been committed as a sexually violent predator shall be permitted to petition the court for conditional release with or without the recommendation or concurrence of the Director of State Hospitals."). See also Cal. Welf. & Inst. Code § 6604.9(d) ("If the [] Department of State Hospitals determines that … conditional release to a less restrictive alternative is in the best interest of the person and conditions can be imposed that adequately protect the community, the director shall authorize the person to petition the court for conditional release to a less restrictive alternative or for an unconditional discharge. The petition shall be filed with the court and served upon the prosecuting agency responsible for the initial commitment."). Finally, Plaintiff asserts that a Superior Court ordered that he be civilly committed and detained.

Thus, based on the allegations in Plaintiff's complaint, it appears that a court, not defendant Clandenin or anyone at DSH, is responsible for determining whether Plaintiff should be conditionally released. Plaintiff does not challenge the constitutionality of the statutory procedures, nor does he sufficiently allege that defendant Clandenin or anyone at the DSH has authority to conditionally release him despite the statutory procedures.

As Plaintiff fails to sufficiently allege that defendant Clandenin or anyone at the DSH is responsible for, or even has the authority to, release civil detainees (even temporarily) so that they can receive in-community treatment, and as, based on Plaintiff's allegations, it is the continued detention that is causing Plaintiff to not receive in-community treatment, Plaintiff fails to connect defendant Clandenin or anyone at the DSH to the alleged constitutional deprivation and thus fails to state a claim.[1]

---

[1] While not taking a position on the issue at this time, the Court notes that Plaintiff's claims may be Heck barred.

"[A] prisoner in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement. He must seek federal habeas corpus relief (or appropriate state relief) instead." Wilkinson v. Dotson, 544 U.S. 74, 78 (2005) (citations and internal quotation marks omitted). In Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), the United States Supreme Court held that to recover damages for "harm caused by actions

C. <u>Claim 2 - Fourteenth Amendment Conditions of Confinement</u>

"[A]n individual detained under civil process—like an individual accused but not convicted of a crime—cannot be subjected to conditions that amount to punishment. Following *Bell*, we have recognized that punitive conditions may be shown (1) where the challenged restrictions are expressly intended to punish, or (2) where the challenged restrictions serve an alternative, non-punitive purpose but are nonetheless excessive in relation to the alternative purpose, or are employed to achieve objectives that could be accomplished in so many alternative and less harsh methods. Legitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility." <u>Jones v. Blanas</u>, 393 F.3d 918, 932 (9th Cir. 2004) (citations and internal quotation marks omitted).

Plaintiff alleges that he has completed the inpatient SVPA treatment program, and has reached Module 4 of the SOTP, the Conditional Release through the Liberty Conditional Release Program. However, Plaintiff is still being subjected to the same conditions as detainees who have not been deemed suitable for the Conditional Release Program, and many of these conditions are as restrictive, or more restrictive, than the conditions faced by prisoners. As Plaintiff has been deemed by DSH to be rehabilitated, Defendants are (or should be) aware that the highly restrictive conditions Plaintiff is subjected to are not necessary.

Liberally construing Plaintiff's complaint, and as this case is at the screening stage, the Court finds that Plaintiff's Fourteenth Amendment conditions of confinement claim against

---

whose unlawfulness would render a conviction or sentence invalid," a § 1983 plaintiff must prove that the conviction or sentence was reversed, expunged, or otherwise invalidated. This preserves the rule that federal challenges, which, if successful, would necessarily imply the invalidity of confinement or its duration, must be brought by way of petition for writ of habeas corpus, after exhausting appropriate avenues of relief. <u>Muhammad v. Close</u>, 540 U.S. 749, 750-751 (2004). Accordingly, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." <u>Wilkinson</u>, 544 U.S. at 81-82. This rule applies to civil detainees who are challenging their civil commitment. <u>Huftile v. Miccio-Fonseca</u>, 410 F.3d 1136, 1139-40 (9th Cir. 2005).

While phrased as seeking treatment, the only treatment Plaintiff seeks involves being released (at least on occasion) so that he can practice his skills "in-community." Thus, Plaintiff appears to be challenging his confinement.

1  defendants Clandenin and Price should proceed past screening.[2]

## IV. CONCLUSION, RECOMMENDATIONS, AND ORDER

The Court has screened the First Amended Complaint and finds that this action should proceed on Plaintiff's Fourteenth Amendment conditions of confinement claim against defendants Clandenin and Price. The Court also finds that all other claims should be dismissed.

The Court will not recommend that further leave to amend be granted. In the Court's prior screening order, the Court identified the deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff with an opportunity to amend his complaint. Plaintiff filed his First Amended Complaint with the benefit of the Court's screening order, but failed to cure the deficiencies identified by the Court. Thus, it appears that further leave to amend would be futile.

Accordingly, based on the foregoing, the Court HEREBY RECOMMENDS that:

1. This case proceed on Plaintiff's Fourteenth Amendment conditions of confinement claim against defendants Clandenin and Price; and
2. All other claims be dismissed for failure to state a claim.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

\\\

\\\

---

[2] While the Court has found that this claim should proceed past screening, the Court is not making a determination that Plaintiff will prevail on this claim or what relief would be available to Plaintiff should he prevail.

     Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated: **July 25, 2023**　　　　　　　　　/s/ *Erica P. Grosjean*
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE