UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY REDDING,<br><br>             Plaintiff,<br><br>     v.<br><br>STEPHANIE CLANDENIN, et al.,<br><br>             Defendants. | Case No. 1:22-cv-01234-JLT-EPG (PC)<br><br>ORDER VACATING FINDINGS AND RECOMMENDATIONS DATED JULY 26, 2023<br><br>(ECF NO. 9)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S FOURTEENTH AMENDMENT CONDITIONS OF CONFINEMENT CLAIM AGAINST DEFENDANTS CLANDENIN AND PRICE, AND THAT ALL OTHER CLAIMS BE DISMISSED<br><br>(ECF No. 7)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

Billy Redding ("Plaintiff") is a civil detainee proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff is detained under the Sexually Violent Predatory Act ("SVPA"). Plaintiff filed the complaint commencing this action on September 28, 2022. (ECF No. 1).

On February 2, 2023, the Court screened Plaintiff's complaint. (ECF No. 6). The Court

1

gave Plaintiff thirty days to either: "a. File a First Amended Complaint; b. Notify the Court in writing that he does not want to file an amended complaint and instead wants to proceed only on his Fourteenth Amendment conditions of confinement claim against defendants Clandenin and Price; or c. Notify the Court in writing that he wants to stand on his complaint."  (Id. at 13).

On February 27, 2023, Plaintiff filed a First Amended Complaint (ECF No. 7).  After reviewing the First Amended Complaint, this Court issued Findings and Recommendations recommending that this action proceed on Plaintiff's Fourteenth Amendment conditions of confinement claim against Defendants Clandenin and Price, and that all other claims be dismissed.  (ECF No. 9)

On August 9, 2023, Plaintiff filed objections to those Findings and Recommendations, arguing that this Court had failed to correctly construe his First Amended Complaint. Specifically, Plaintiff explained that he was not seeking "conditional release," which is a process provided under the Welfare and Institutions Code that requires a Court order.  Instead, he was claiming that Defendant Clandenin was violating his Fourteenth Amendment Due Process rights by not granting him "day passes," which would allow him temporary leave from his facility.  (ECF No. 10).  In order to address those objections and ensure that Plaintiff's claims are correctly described and analyzed under applicable law, the hereby vacates its previous Findings and Recommendations and issues the following revised Findings and Recommendations.

In Plaintiff's First Amended Complaint, Plaintiff alleges that officials at Coalinga State Hospital (CSH) have deemed Plaintiff suitable for advancement to "Module 4: Conditional Release through the Liberty Conditional Release Program."  Plaintiff alleges that Defendant Clandenin has the authority to alter the Sex Offender Treatment Program ("SOTP") and thus alter the manner within which all treatment is administers.  Specifically, Defendant Clandenin is capable of creating policies that would ensure that patients receive "Day Passes," that would permit them to engage with the community and practice the principles they have learned as patients.  Defendant Clandenin's failure to create such policies, or implement any form of "Day Pass" program for SVPA patients, results in Plaintiff being denied treatment that provides him

with a realistic opportunity to be cured and released from civil commitment. Plaintiff also alleges that Defendants Clandenin and Price have implemented highly restrictive conditions on Plaintiff that are identical to those imposed on prisoners, such as prohibitions on the use of cellphones and personal computers, which are not appropriate given Plaintiff's level of rehabilitation and are, thus, punitive in violation of the Fourteenth Amendment's protections for civil detainees.

For the reasons described below, the Court will recommend that this action proceed on Plaintiff's Fourteenth Amendment conditions of confinement claim against Defendants Clandenin and Price. The Court will also recommend that all other claims be dismissed.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

**I.      SCREENING REQUIREMENT**

As Plaintiff is proceeding *in forma pauperis* (ECF No. 4), the Court screens the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

1  Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal
2  pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that
3  *pro se* complaints should continue to be liberally construed after Iqbal).

**II.  SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff alleges as follows in his complaint:

The incidents occurred at Department of State Hospitals, Coalinga ("DSH Coalinga"). As defendants, Plaintiff names Stephanie Clandenin, the Director of the Department of State Hospitals, and Brandon Price, the Executive Director of DSH Coalinga. Both defendants are sued in their official capacity only.

Plaintiff has been a Department of State Hospitals ("DSH") civil detainee since approximately May 14, 2002. Plaintiff was ordered civilly detained, and later civilly committed, pursuant to California's Sexually Violent Predator Act ("SVPA"). Subsequently, Plaintiff was ordered to remain civilly detained by the DSH for two purposes: (1) protection of the public; and (2) treatment the state deemed was required to ensure he was rehabilitated such that he will no longer be a danger to the public.

On or about June 18, 2006, Plaintiff began the DSH's "Sex Offender Treatment Program" ("SOTP").

In order for a civilly committed SVPA detainee to reach SOTP Module 4, the DSH Coalinga Medical Director, the DSH Coalinga Chief of Psychology, the Director of the SOTP (i.e., the most senior treatment supervisors within the facility), and a representative of the DSH's Conditional Release Program ("CONREP") are required to conduct a thorough assessment of the detainee. Said assessment includes, but is not limited to, reviewing the SVPA detainee's mental health charts, consulting with his treatment providers, reviewing his treatment work, and interviewing said detainee. For the SVPA detainee to successfully be advanced to SOTP Module 4, these supervisors must unanimously deem the SVPA detainee suitable for "community reintegration."

On or about September 23, 2020, the DSH Coalinga Medical Director, the DSH Coalinga Chief of Psychology, the Director of the SOTP, and a representative of the DSH's

4

CONREP unanimously deemed Plaintiff to be suitable for advancement to "Module 4: Conditional Release through the Liberty Conditional Release Program (CONREP)" of the DSH's SOTP.

Defendants are legally responsible, in whole or in part, for the operation of DSH Coalinga and for the health and safety of the persons residing in said facility.

DSH Coalinga provides care and mental health treatment to psychiatric patients committed civilly, or civilly detained, pursuant to the SVPA.

Defendants are obligated to operate DSH Coalinga in a manner that does not infringe upon the federal rights, as protected by the Fourteenth Amendment to the Constitution of the United States, of individuals confined to DSH Coalinga.

Defendant Clandenin, as the most senior supervisor, administrator, and policymaker within the DSH, endorsed the DSH's SVPA treatment program entitled SOTP.  The SOTP is described in detail within a document entitled "Sex Offender Treatment Program (SOTP) Program Description," which was last revised in 2016.  This document outlines the rationale of the SOTP, and the manner within which the SOTP is to be administered by DSH facilities, including DSH Coalinga.

Defendant Clandenin has the authority to alter the manner within which all treatment within DSH facilities is administered, including the SOTP.

The "Sex Offender Treatment Program (SOTP) Program Description" notes the treatment program "incorporates components of the Self-Regulation/Better Life (SR/BL) models and complies with Risk-Need-Responsivity (RNR) principles.  These models are integrated into a combined approach to strengthen an individual's self-regulation skills and to prepare him for a better life free of sexual offending.  The fundamental goal of the program is for the individual to acquire pro-social skills and to prevent recurrence of sexual offending."

The "Sex Offender Treatment Program (SOTP) Program Description" notes the that the Risk-Needs-Responsibility principles involve three components: (1) the risk principle; (2) the need principle; and (3) the responsibility principle.

Defendant Clandenin placed Dr. Deidre D'Orazio in the position of DSH SVPA

1  Conditional Release Program Liaison Supervisor.  Dr. D'Orazio has attended forums at DSH
2  Coalinga, which Plaintiff assisted in administering through his involvement with DSH
3  Coalinga's "Patients Collaborative Leadership Skills" ("PCLS") group.  At said forums, Dr.
4  D'Orazio noted that once DSH's SVPA patients reach SOTP Module 4, their treatment needs
5  require them to practice their skills within the community under the supervision of DSH
6  clinicians to ensure that the skills they have learned from SOTP Modules 1 to 3 have been
7  successfully internalized and to ensure said patients address any issues that could only become
8  apparent to said DSH clinicians through in-community practice of said skills.

        Consistent with Defendant Clandenin's Risk-Needs-Responsivity principles, the Sex Offender Treatment Program (SOTP) Program Description," and Dr. D'Orazio's statements, the SOTP is designed in a manner wherein as SVPA DSH patients progress through the treatment program, they will have learned skills needed to address their "Dynamic Risk Factors," where ultimately their treatment needs require them to practice said skills within the community.  Further, at the point they reach SOTP Module 4, said DSH SVPA patients' treatment needs involve DSH treatment providers addressing any issues they discover through the patients' behavior within the community.  Finally, SOTP Module 4 patients require in-community practice of their skills; DSH treatment providers monitoring said in-community practice; and DSH treatment providers responding to any issues that arise through said in-community practice towards treatment completion (i.e., DSH deeming no further treatment is needed).

        The Risk-Needs- Responsivity principles require in-community practice once the DSH patient has reached SOTP Module 4 to be consistent with his individualized treatment need.  The risk principle is such where those supervisors (whom Defendant Clandenin has put in place to administer her SVPA treatment program) have deemed that DSH patients who have reached SOTP Module 4 can be safely treated within the community.  The needs principle is only satisfied if SOTP Module 4 patients are given the opportunity to practice their skills within the community.  The responsivity principle is only satisfied if DSH treatment providers are given the opportunity to monitor how detainees are managing their "Dynamic Risk Factors" within

the community, gauge whether there is any further fine tuning that is required, and respond accordingly by providing individualized treatment to address those identified issues.

Defendant Clandenin and Dr. D'Orazio have outlined the fact that the DSH's SVPA treatment program requires patients to complete this portion of the SOTP, which requires in-community practice, so that they can show their treatment providers they have successfully internalized the skills needed to be unconditionally discharged from SVPA civil commitment. Absent in-community practice, patients do not have a reasonable opportunity to be deemed "cured" so that they can be released completely from SVPA civil commitment.

In-community engagement of civilly committed mental health patients has been used by the state via "Day Passes."

Defendant Clandenin is capable of creating policies that ensure that SVPA DSH SOTP Module 4 inpatients are provided with "Day Passes" that would permit carefully controlled in-community engagement. Once patients have successfully demonstrated treatment completion, treatment supervisors could recommend the unconditional discharge of that patient from SVPA civil commitment. However, Defendant Clandenin has not created these policies. This failure results in Plaintiff being denied treatment that provides him with a realistic opportunity to be "cured" and released from his civil commitment.

Defendant Clandenin is aware, or should be aware, that in order to satisfy the Fourteenth Amendment, she is required to create policies that ensure that Plaintiff is provided with appropriate individualized treatment that affords him with a realistic opportunity to be cured and released from his civil commitment.

Defendant Clandenin failed to create policies that require Plaintiff to be provided with individualized and appropriate treatment. This failure prevents Plaintiff from meeting the statutory criteria for release from SPVA civil commitment. Additionally, this failure results in the nature and duration of Plaintiff's continued confinement not bearing a reasonable relation to one of the two purposes for which Plaintiff was committed, namely being provided with appropriate mental health treatment.

Defendants Clandenin and Price have deemed that DSH Coalinga's restrictive

conditions of confinement are required to manage those SVPA detainees who, unlike Plaintiff, have not been rehabilitated sufficiently to have completed the inpatient SVPA treatment program.  Such restrictive conditions include, but are not limited to: detainees being prohibited from possessing cellphones, which is a restriction that is identical to that experienced by California Department of Corrections and Rehabilitation ("CDCR") prisoners; detainees being prohibited from possessing personal computers, which is a restriction that is identical to that experienced by CDCR prisoners; detainees being prohibited from having any access to the internet, which is a restriction that is more restrictive than that experienced by CDCR prisoners and California's federal prisoners who are permitted limited internet access; detainees being prohibited from possessing any devices capable of accessing the internet, which is a restriction that is more restrictive than that experienced by CDCR prisoners who are permitted tablets that have internet access; detainees being prohibited from having "Day Passes" wherein they are able to leave the DSH facility grounds, either with or without supervision, during the day, which is a restriction that is identical to that experienced by CDCR prisoners; detainees being prohibited from possessing their own vitamins and medication, which is a restriction that is more restrictive than that experienced by CDCR prisoners, who are permitted to purchase vitamins and to have "keep on person" medications; detainees being prohibited from having privacy, a restriction that is identical to that experienced by CDCR prisoners; detainees being prohibited from having adequate access to law library material, which is a restriction that is identical to that experienced by CDCR prisoners and more restrictive than that experienced by California's federal prisoners; and detainees being prohibited from having a personal television with either cable or satellite television access, a restriction that is more restrictive than that experienced by CDCR prisoners.

Defendants are aware, or should be aware, that the Fourteenth Amendment prohibits Plaintiff from being subjected to punishment while in their custody.

Defendants are aware, or should be aware, that even if the highly restrictive conditions described by Plaintiff may have been rational prior to Plaintiff having been deemed by DSH to be rehabilitated, none of those highly restrictive conditions are currently appropriate for

1    Plaintiff now that he has reached SOTP Module 4.  Defendants play a significant role in
2    administering the DSH SOTP.  Specifically, Defendants are aware, or should be aware, that
3    none of the restrictive conditions exist, and are thus deemed necessary, within DSH's SVPA
4    conditional release program administered by Defendant Clandenin.  Defendants are aware, or
5    should be aware, that not one SVPA detainee who has ever been released into the SVPA
6    CONREP outpatient treatment program has ever been convicted of a sexually violent offense
7    subsequent to being released into the program.

8        Defendants are aware, or should be aware, that transitional housing within the secure
9    boundaries of the DSH, with conditions that mirror those afforded to SVPA DSH outpatients
10   and thus include none of the prison-like conditions described by Plaintiff, would be a
11   reasonable and less harsh method of confining Plaintiff while he awaits court-ordered release.
12   The state provides DSH with over $240,000 per year for the care of Plaintiff, and for a small
13   fraction of funds the DSH could: provide a small inexpensive mobile home on DSH property
14   for Plaintiff to live in; install a GPS ankle bracelet on Plaintiff; have Plaintiff's ankle bracelet
15   monitored; have DSH psychiatric technicians communicate with Plaintiff's employers and
16   otherwise supervise Plaintiff during his Day Passes; have cable or satellite television installed
17   for Plaintiff's use; provide Plaintiff with access to the DSH's internet provider; provide
18   Plaintiff with home appliances; and otherwise provide for Plaintiff to live a normal life with the
19   exception of his residing on DSH grounds, and subject to conditions of supervision that are not
20   excessively restrictive.

21       In his first claim, Plaintiff alleges that Defendant Clandenin's failure to provide
22   adequate treatment violates the Due Process Clause of the Fourteenth Amendment.  In his
23   second claim Plaintiff alleges that Defendants' failure to provide non-punitive housing
24   arrangements violates the Due Process Clause of the Fourteenth Amendment.

25       **III.    ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT**
26           A.  <u>Section 1983</u>
27       The Civil Rights Act under which this action was filed provides:
28       Every person who, under color of any statute, ordinance, regulation, custom, or

> usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S.

658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

"A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013) (citation omitted).

### B. Claim 1 – Fourteenth Amendment Medical Care

"Involuntarily committed patients in state mental health hospitals have a Fourteenth Amendment due process right to be provided safe conditions by the hospital administrators....

[W]hether a hospital administrator has violated a patient's constitutional rights is determined by whether the administrator's conduct diverges from that of a reasonable professional.  In other words, a decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.  This standard has been referred to as the *Youngberg* professional judgment standard.  The *Youngberg* standard differs from the deliberate indifference standard used in Eighth Amendment cruel and unusual punishment cases, in that [p]ersons who have been involuntarily committed are entitled to *more considerate treatment and conditions of confinement* than criminals whose conditions of confinement are designed to punish." Mitchell v. Washington, 818 F.3d 436, 443 (9th Cir. 2016) (alterations in original) (citations and internal quotation marks omitted).  "[C]ourts must restrict their inquiry to two questions: (1) whether the decisionmaker is a qualified professional entitled to deference, and (2) whether the decision reflects a conscious indifference amounting to gross negligence, so as to demonstrate that the decision was not based upon professional judgment." Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992).

Additionally, "the Fourteenth Amendment Due Process Clause requires states to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released." Sharp v. Weston, 233 F.3d 1166, 1172 (9th Cir. 2000).

Plaintiff alleges that on or about September 23, 2020, the DSH Coalinga Medical Director, the DSH Coalinga Chief of Psychology, the Director of the SOTP, and a representative of the DSH's CONREP unanimously deemed Plaintiff to be suitable for advancement to "Module 4: Conditional Release through the Liberty Conditional Release Program (CONREP) of the DSH's SOTP."  Additionally, Dr. Deidre D'Orazio, the DSH SVPA Conditional Release Program Liaison Supervisor, has stated that once DSH's SVPA patients reach SOTP Module 4, their treatment needs require them to practice their skills within the community under the supervision of DSH clinicians to ensure that the skills they have learned

from SOTP Modules 1 to 3 have been successfully internalized and to ensure said patients address any issues that could only become apparent to said DSH clinicians through in-community practice of said skills.

Plaintiff further alleges that Defendant Clandenin is capable of creating policies that ensure that SVPA DSH SOTP Module 4 inpatients are provided with "Day Passes" that would permit carefully controlled in-community engagement.  Once patients have successfully demonstrated treatment completion, treatment supervisors could recommend the unconditional discharge of that patient from SVPA civil commitment.  However, Defendant Clandenin has not created these policies.  This failure results in Plaintiff being denied treatment that provides him with a realistic opportunity to be "cured" and released from his civil commitment.

The Court finds that Plaintiff fails to state a claim based on failure to provide adequate medical care.

As Plaintiff describes in his First Amended Complaint, and confirmed in his Objections to the Court's initial Findings and Recommendations, there is a legal process in place to obtain Community Integration, which requires a state court order approving conditional release. According to the Sex Offender Treatment Program Description attached to Plaintiff's complaint, "[i]f the individual has met all of the criteria, the panel will recommend the patient for *Community Reintegration*."  (ECF No. 7, pgs. 36-37).  Such conditional release must be ordered by the state court.  (ECF No. 7, p. 37) ("CONREP is responsible for supervising and treating conditionally released SVP patients court-ordered into the community…. Conditionally released SVP patients must comply with court-ordered terms and conditions."). Additionally, California Welfare and Institutions Code § 6608 states that a petition for conditional release is to be brought before a court.  Cal. Welf. & Inst. Code § 6608(a) ("A person who has been committed as a sexually violent predator shall be permitted to petition the court for conditional release with or without the recommendation or concurrence of the Director of State Hospitals.").  <u>See also</u> Cal. Welf. & Inst. Code § 6604.9(d) ("If the [] Department of State Hospitals determines that … conditional release to a less restrictive alternative is in the best interest of the person and conditions can be imposed that adequately

protect the community, the director shall authorize the person to petition the court for conditional release to a less restrictive alternative or for an unconditional discharge. The petition shall be filed with the court and served upon the prosecuting agency responsible for the initial commitment."). However, Plaintiff asserts that a Superior Court ordered that he be civilly committed and detained.

In Plaintiff's Objections to the Court's initial Findings and Recommendations, Plaintiff clarified that "*no where* in the facts supporting Claim 1 does it indicate that Plaintiff alleges Defendant Clandenin was violating his Fourteenth Amendment Due Process right to adequate treatment by failing to have Plaintiff conditionally released from civil commitment. Rather, Plaintiff alleges Defendant Clandenin was violating his Fourteenth Amendment Due Process right to adequate treatment by (among other contentions) failing to use the ability, that said Defendant possess, to afford Plaintiff with 'Day Passes.'" (ECF No. 10, at p. 2) (emphasis in original). He further explained that "'Day passes' refers to *temporary leave* from a facility.'" (ECF No. 10, at p. 3) (emphasis in original). Plaintiff claims that DSH would not need a court order to administer day passes because the patients would not be discharged from the facility—they would just be allowed to leave the facility temporarily.

The Court finds that Plaintiff has failed to state a constitutional claim based on Defendants' failure to implement policies permitting Plaintiff to leave the facility through "Day Passes." Day Passes, as explained by Plaintiff, are in fact a release from custody, albeit on a temporary basis. Indeed, Plaintiff's complaint describes them as being "similar to how both high risk California sex offenders have been supervised on parole, and SVPA outpatients are supervised." (ECF No. 7, at p. 7). But Plaintiff is not entitled to release from detention as a form of "treatment," even on a temporary basis. While the due process clause "requires states to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released," *Sharp,* 233 F.3d at 1172 (citing *Ohlinger,* 652 F.2d at 778), it does not require release itself as a method of treatment.

Moreover, a claim for release, even temporary release, challenges Plaintiff's continued confinement and thus must be brought through a petition for writ of habeas corpus, assuming

that other requirements are met. "[A] prisoner in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement. He must seek federal habeas corpus relief (or appropriate state relief) instead." Wilkinson v. Dotson, 544 U.S. 74, 78 (2005) (citations and internal quotation marks omitted). Accordingly, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson, 544 U.S. at 81-82. This rule applies to civil detainees who are challenging their civil commitment. Huftile v. Miccio-Fonseca, 410 F.3d 1136, 1139-40 (9th Cir. 2005). While phrased as seeking treatment, the only treatment Plaintiff seeks involves being released (at least on occasion) so that he can practice his skills "in-community." Such a claim challenges the constitutionality of his confinement itself.

Here, Plaintiff has been detained by court order. His request for "day passes," amounts to a challenge to that confinement and cannot be brought in a section 1983 claim.

### C. Claim 2 - Fourteenth Amendment Conditions of Confinement

"[A]n individual detained under civil process—like an individual accused but not convicted of a crime—cannot be subjected to conditions that amount to punishment. Following *Bell*, we have recognized that punitive conditions may be shown (1) where the challenged restrictions are expressly intended to punish, or (2) where the challenged restrictions serve an alternative, non-punitive purpose but are nonetheless excessive in relation to the alternative purpose, or are employed to achieve objectives that could be accomplished in so many alternative and less harsh methods. Legitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility." Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) (citations and internal quotation marks omitted).

Plaintiff alleges that he has completed the inpatient SVPA treatment program, and has reached Module 4 of the SOTP, the Conditional Release through the Liberty Conditional Release Program. However, Plaintiff is still being subjected to the same conditions as

detainees who have not been deemed suitable for the Conditional Release Program, and many of these conditions are as restrictive, or more restrictive, than the conditions faced by prisoners. As Plaintiff has been deemed by DSH to be rehabilitated, Defendants are (or should be) aware that the highly restrictive conditions Plaintiff is subjected to are not necessary.

Liberally construing Plaintiff's complaint, and as this case is at the screening stage, the Court finds that Plaintiff's Fourteenth Amendment conditions of confinement claim against Defendants Clandenin and Price should proceed past screening.[1]

**IV.     CONCLUSION, RECOMMENDATIONS, AND ORDER**

The Court has screened the First Amended Complaint and finds that this action should proceed on Plaintiff's Fourteenth Amendment conditions of confinement claim against Defendants Clandenin and Price.  The Court also finds that all other claims should be dismissed.

The Court will not recommend that further leave to amend be granted.  In the Court's prior screening order, the Court identified the deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff with an opportunity to amend his complaint.  Plaintiff filed his First Amended Complaint with the benefit of the Court's screening order, but failed to cure the deficiencies identified by the Court.  Thus, it appears that further leave to amend would be futile.

Accordingly, based on the foregoing, the Court HEREBY RECOMMENDS that:

1. This case proceed on Plaintiff's Fourteenth Amendment conditions of confinement claim against Defendants Clandenin and Price; and
2. All other claims be dismissed for failure to state a claim.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff

---

[1] While the Court has found that this claim should proceed past screening, the Court is not making a determination that Plaintiff will prevail on this claim or what relief would be available to Plaintiff should he prevail.  The Court is also not precluding Defendants from filing a motion to dismiss.

may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

     Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

    Dated:   **October 10, 2023**              /s/ *Erica P. Grosjean*
                                                       UNITED STATES MAGISTRATE JUDGE