**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BILLY REDDING,<br><br>  Plaintiff,<br><br>  v.<br><br>STEPHANIE CLENDENIN, et al.,<br><br>  Defendants. | Case No. 1:22-cv-01234 JLT EPG (PC)<br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS IN PART<br><br>ORDER THAT THIS CASE PROCEED ON CLAIM TWO OF PLAINTIFF'S FIRST AMENDED COMPLAINT<br><br>(Docs. 7, 11.) |

Billy Redding, a civil detainee, alleges the Director of Department of State Hospitals, Stephanie Clendenin,[1] and the Director of Coalinga State Hospital, Brandon Price, violated his civil rights. (Doc. 7.) Plaintiff names Defendants in their official capacities and seeks injunctive relief, challenging policies related to the DSH-Coalinga sex offender treatment program and conditions of his civil detention under the Fourteenth Amendment Due Process Clause. (*Id.*) This matter was referred to a United States Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The magistrate judge prepared findings and recommendations, which the court adopts in part, as explained in this order. The amended complaint is dismissed in part with leave to amend.

////

////

---

[1] The operative complaint misspells Defendant Clendenin's last name. The Clerk's Office is instructed to correct the caption of this action accordingly.

**BACKGROUND**

Plaintiff was convicted of forcible rape in 1973 and released on parole in 1977. *People v. Redding* (*Redding II*), No. B323749, 2023 WL 3577181, at *1 (Cal. Ct. App. May 22, 2023); *People v. Redding* (*Redding I*), B283834, 2018 WL 2439882, at *1 (Cal. Ct. App. May 31, 2018).[2] After his release, he was convicted again of forcible rape, and he was sentenced to a second prison term, which he completed in 1985. *Redding II*, 2023 WL 3577181, at *1. In 1988, he was again charged with forcible rape based on events that occurred after his most recent release, "but that charge was dismissed when the victim did not cooperate." *Redding I*, 2018 WL 2439882, at *1. In 1992, Plaintiff was convicted of two assaults to commit rape and sentenced to a third prison term. *Id.*; *Redding II*, 2023 WL 3577181, at *1. After this conviction, he was committed civilly for treatment as a "sexually violent predator," sometimes referred to as "SVP patients" under the terms of California Welfare & Institutions Code § 6600(a)(1), which is a provision of the California Sexually Violent Predator Act or "SVPA." *Redding II*, 2023 WL 3577181, at *1. As noted in the introduction, Plaintiff is currently detained at DSH-Coalinga. (Doc. 7 ¶ 5.)

People who have been committed as SVP patients may petition a state court for "conditional release" or "unconstitutional discharge." Cal. Welf. & Inst. Code § 6608(a), (m); *see also id.* § 6605 (describing court procedures). If the petition meets certain threshold requirements, the state court must "hold a hearing to determine whether the person committed would be a danger to the health and safety of others in that it is likely that the person will engage in sexually violent criminal behavior due to the person's diagnosed mental disorder if under supervision and treatment in the community." *Id.* § 6608(g). By default, the committed person has "the burden of proof by a preponderance of the evidence." *Id.* § 6608(k). But if officials

---

[2] The court takes judicial notice of this and other publicly available facts about Plaintiff's state court cases under Federal Rule of Evidence 201. These facts "can be accurately and readily determined" from the cited state court decisions, and their "accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(b)(2); *see also U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (holding courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue" (citation omitted)).

2

1   within the state hospital have issued a report finding "conditional release to a less restrictive
2   alternative is in the best interest of the person and that conditions can be imposed that would
3   adequately protect the community," then the burden shifts to "the state to show, by a
4   preponderance of the evidence, that conditional release is not appropriate." *Id.*

5   Plaintiff filed unsuccessful petitions for conditional release or discharge in state court
6   2013, 2017 and 2020. *See Redding I*, 2018 WL 2439882, at *1; *Redding II*, 2023 WL 3577181,
7   at *1. The state court held a hearing on the most recent of these petitions in July 2022. *Id.*
8   Among other evidence, the court received a report showing Plaintiff had advanced to the fourth
9   and final "module" in the facility's sex offender treatment program, which meant he was ready
10  for conditional release and treatment outside the state hospital based on a report by state officials
11  cited in section 6608(k), quoted above. *Id.* at *2. As Plaintiff alleges in this action, his
12  advancement to the fourth module was possible only because the medical director, chief of
13  psychology, director of the sex offender treatment program, and a representative of the
14  conditional release program unanimously agreed he was "suitable" for conditional release. (Doc.
15  7 ¶ 13.) It was thus the state's burden to show release was not appropriate.

16  The superior court denied the petition. *Redding II*, 2023 WL 3577181, at *4. The court
17  found the state had carried its burden. *Id.* at *5. In the court's view, Plaintiff posed a "continuing
18  threat" due to "his mental illness, his history of sexually violent predation, and his progress or
19  lack thereof while in confinement." *Id.* The court cited evidence that Plaintiff continued to
20  disagree with one of his mental health diagnoses (narcissistic personality disorder), had attempted
21  to hide and fabricate documents, lacked empathy and insight, was dismissive about his victims,
22  falsely claimed to have developed a romantic relationship with a teacher who worked with him
23  within the prison, admitted to lying on a polygraph test, and claimed to be capable of conditioning
24  himself to pass polygraph tests, among other things. *Id.*

25  Plaintiff pursued an appeal. (*See id.* at *1.) He also filed this pro se civil rights action in a
26  complaint filed in 2022. (Doc. 1.) He asserted two claims, both under on 42 U.S.C. § 1983. (*Id.*
27  ¶¶ 25–37.) First, he alleged the conditions of his confinement were unconstitutionally punitive or
28  excessively restrictive in violation of the Fourteenth Amendment. Second, he alleged the

1  defendant officials had denied him treatment in violation of the Fourteenth Amendment by
2  preventing him from taking part in outpatient treatment. (*See id.*) The magistrate judge granted
3  his request to proceed in forma pauperis and screened his complaint under 28 U.S.C. § 1915.
4  (Docs. 4, 6.) The magistrate judge permitted Plaintiff to proceed with his claim about the
5  conditions of his confinement, but she found his treatment claim fell short of the applicable
6  pleading standards. (Doc. 6 at 9–11.) The magistrate judge granted Plaintiff leave to amend, and
7  he filed his operative First Amended Complaint, in which he again alleges that the conditions of
8  his confinement are unconstitutionally punitive or excessively restrictive and that state officials
9  have unconstitutionally denied him outpatient treatment. (Doc. 7.)
10  After Plaintiff amended his complaint, the Court of Appeal affirmed the state trial court's
11  decision to deny his most recent petition for conditional release. *Redding II*, 2023 WL 3577181,
12  at *5–6. The magistrate judge also screened Plaintiff's amended complaint in this case. She
13  found as before that only Plaintiff's claim about the conditions of his commitment could proceed,
14  recommending his treatment claim be dismissed, this time without leave to amend, finding an
15  amendment would be an exercise in futility. (Doc. 9.) Plaintiff objected and argued the
16  magistrate judge had incorrectly interpreted his treatment claim as challenging Defendants'
17  refusal to grant him a conditional release under the terms of the Welfare and Institutions Code.
18  (Doc. 10 at 1.) He explained that his claim was not about conditional release, not about the
19  Welfare and Institutions Code, and not an attack on his unsuccessful state court petitions; his
20  current claim is instead based on Defendants' alleged refusal to grant him "temporary leave" by
21  issuing "day passes," as is common when a detainee or prisoner must receive in-patient medical
22  treatment at an off-site hospital, for example. (*See id.* at 2.)
23  The magistrate judge vacated and revised the original Findings and Recommendations
24  after reviewing Plaintiff's objections. (Doc. 11 at 2.) But the magistrate judge remained
25  persuaded that the amended complaint did not state a claim based on any failure to provide
26  adequate medical care. (*Id.* at 13–15). Although the magistrate judge agreed a state must
27  "'provide civilly committed persons with access to mental health treatment that gives them a
28  realistic opportunity to be cured and released,'" she disagreed that the Constitution requires

4

1  "release itself as a method of treatment." (*Id.* at 14 (quoting *Sharp v. Weston*, 233 F.3d 1166,
2  1172 (9th Cir. 2000)).)  The magistrate judge also interpreted Plaintiff's treatment claim as
3  implicitly challenging the constitutionality of his confinement itself. (*Id.* at 15.)  If a plaintiff's
4  success in a civil rights action would "necessarily demonstrate the invalidity of confinement or its
5  duration," that action is "barred." (*Id.* (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005)) and
6  citing *Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1139–40 (9th Cir. 2005)).)  The magistrate
7  judge thus recommends dismissing Plaintiff's medical treatment claim without leave to amend.
8  (*See id.* at 16.)  Plaintiff objects to the Findings and Recommendations because, in his view, the
9  magistrate judge improperly equated temporary leave on a day pass with a release from custody.
10  (Doc. 12 at 5–9.)

11  The Court has reviewed the matter de novo under 28 U.S.C. § 636(b)(1).  The Court
12  adopts the magistrate judge's Findings and Recommendations in part with respect to Plaintiff's
13  claim about the conditions of his confinement.  The magistrate judge correctly found that Plaintiff
14  has alleged facts about the restrictive conditions of his confinement that could support a plausible
15  claim under the Fourteenth Amendment. (Doc. 11 at 15–16.)  The Court declines to adopt the
16  magistrate judge's analysis of Plaintiff's medical treatment claim.  The Court concludes as the
17  magistrate judge did that his treatment claim is not viable, but for different reasons than those in
18  the Findings and Recommendations.

**LEGAL STANDARD**

20  The Findings and Recommendations accurately describe the Court's duty to screen a
21  complaint under 28 U.S.C. § 1915. (*See* Doc. 11 at 3–4.)  In short, the Court must dismiss the
22  complaint if it "does not state a claim upon which relief may be granted." 28 U.S.C.
23  § 1915(e)(2)(B)(ii).  To state a claim, a complaint must include "sufficient factual matter,
24  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556
25  U.S. 662, 678 (quoting *Bell Alt. Co. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint does
26  not meet this standard if it lacks a "cognizable legal theory." *Hinds Invs., L.P. v. Angioli*, 654
27  F.3d 846, 850 (9th Cir. 2011).

1    Plaintiffs may pursue prospective injunctive relief in actions against state officials sued in
2 their official capacity for ongoing violations of federal constitutional law, as Plaintiff does in this
3 case. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002)
4 (citing *Ex parte Young*, 209 U.S. 123 (1908)). States can detain people involuntarily on the basis
5 of their dangerousness, attributable to a mental illness, without running afoul of federal
6 constitutional law in some circumstances. *See Kansas v. Hendricks*, 521 U.S. 346, 357–59
7 (1997). But the people a state detains on this basis have "a constitutional right to receive 'such
8 individual treatment as will given each of them a realistic opportunity to be cured or to improve
9 his or her mental condition.'" *Ohlinger v. Watson*, 652 F.2d 775, 778 (1980) (quoting *Wyatt v.
10 Stickney*, 325 F. Supp. 781, 784 (M.D. Ala. 1971)). The Supreme Court has described a state's
11 "discretion in determining the nature and scope of its responsibilities" as "considerable."
12 *Youngberg v. Romeo*, 457 U.S. 307, 317 (1982). It has also said states have "wide latitude in
13 developing treatment regimens." *Hendricks*, 521 U.S. at 368 n.4. An appropriate professional's
14 decisions are in fact "entitled to a presumption of correctness" under *Youngberg*. 457 U.S.
15 at 324. "Such a presumption is necessary to enable institutions of this type—often, unfortunately,
16 overcrowded and understaffed—to continue to function." *Id,*

17    To move past screening, then, the amended complaint must include factual allegations
18 that, assumed true, rebut the presumption that Defendants have made correct treatment decisions.
19 Plaintiff's allegations must give rise to a plausible claim that Defendants have gone beyond their
20 considerable discretion and wide latitude and that he has no realistic opportunity to be cured or
21 improve his condition.

22                                    **DISCUSSION**

23    Plaintiff's allegations do not clear this bar. He alleges that under the state hospital's sex
24 offender treatment program, patients must ultimately "practice" the skills they have learned
25 "within the community under the supervision of DSH clinicians . . . to ensure the skills they have
26 learned . . . have been successfully internalized" and to ensure they "address any issues that could
27 only become apparent" only outside the state hospital. (Doc. 7 ¶ 19; *see also id.* Ex. A ¶ C.4.)
28 And so, if patients cannot "participate in this component of Defendant Clendenin's program,

[they] would never have the ability to . . . demonstrate to DSH treatment providers, through their behavior in the community, that they have successfully internalized the skills needed to be unconditionally discharged" from civil commitment. (*Id.* ¶ 20.)

Plaintiff has attached a copy of the 2016 version of the written sex offender treatment program to his amended complaint. In the section describing in-community treatment, the written program states that its "primary objective is to balance community safety with opportunities for SVP patients to successfully and safely integrate into their communities." (*See id.* Ex. A ¶ C.4.) The written program explains briefly that officials rely on a "Containment Model," which includes both "collaborative case management" and "specialized sex offender treatment, supervision, and assessment services." (*Id.*) Each patient has a "Community Safety Team" made up of "trained supervisors, polygraph examiners, treatment providers, psychiatrists, assessment specialists, law enforcement representatives, and victim advocates." (*Id.*) This team meets at least monthly during a patient's release. (*Id.*)

The written program also expressly contemplates that patients will receive this type of supervision and treatment only after a state court orders their conditional release. (*Id.*) Patients "must comply with court-ordered terms and conditions," such as "attendance at individual and group therapy sessions, psychiatric appointments, substance abuse treatment, active GPS monitoring, daily telephone contact, medication compliance, regular home visits and searches, collateral contacts, random substance abuse testing, polygraph examinations, and assessments of sexual interest and risk." (*Id.*) They may be "returned to the state hospital" if they do not comply with these terms and conditions. (*Id.*)[3]

---

[3] The California Court of Appeal has stated at least twice, albeit in unpublished opinions, that SVP patients can complete the fourth and final module of the state hospital's treatment program while confined within the state hospital. *See People v. Carder*, No. D079073, 2022 WL 3905765, at *2 (Cal. Ct. App. Aug. 31, 2022) ("Module IV can be completed at the hospital or potentially in outpatient care on conditional release."); *Felix v. Clendenin*, No. F084034, 2024 WL 302375, at *3 (Cal. Ct. App. Jan. 26, 2024) ("In Module IV, patients continue to prepare for community reintegration and potential conditional release . . . ."). Plaintiff alleges differently. (*See, e.g.*, Doc. 7 ¶ 20.) It is not necessary to decide whether Plaintiff's allegations contradict a fact that is subject to judicial notice, and thus not assumed to be true at this stage. *Cf. Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.) ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."), *as amended*

Although officials have found Plaintiff is ready to begin treatment outside the state hospital, the state courts have denied Plaintiff's petitions for conditional release. They have found he poses a "continuing threat" due to "his mental illness, his history of sexually violent predation, and his progress or lack thereof while in confinement." *Redding II*, 2023 WL 3577181, at *5. Plaintiff alleges he could nevertheless begin treatment outside the state hospital now. He proposes, as an alternative to court-ordered conditional release, that officials could issue him and other patients "day passes" that would permit them to leave the state hospital in "carefully controlled in-community engagement," consistent with the sex offender treatment program. (Doc. 7 ¶ 22.) He alleges a patient's release on a day pass could be "effectively administered in a manner that is similar to how both high risk California sex offenders have been supervised on parole, and SVPA outpatients are supervised." (*Id.*) He proposes fitting patients with "GPS ankle-bracelets" and subjecting them to surveillance by psychiatric technicians and law enforcement officers. (*Id.*)

Plaintiff does not state clearly whether his treatment claim embodies a facial constitutional challenge (i.e., that a day pass program is a necessary component of any constitutional policy, regardless of the patient's identity and characteristics) or an as-applied challenge (i.e., that it is unconstitutional not to offer treatment outside the state hospital to Plaintiff in particular). The Court will consider both interpretations of his claim, beginning with a facial challenge.

A facial challenge "is the most difficult challenge to mount successfully," because the proponent must show there is "'no set of circumstances'" in which the challenged law would be valid. *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Defendants would therefore prevail in Plaintiff's case by showing the current policy is "constitutional in some of its applications." *Id.*

Even assuming, as the Court must at this early stage, that a day-pass program like the one Plaintiff proposes could be created and would be consistent with the broader purposes of the state hospital's sex offender treatment program, the amended complaint does not state a claim. Civil

---

*on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) That is because the operative complaint does not state a claim even if Plaintiff's allegations are true, as explained below.

8

commitment policies such as these do not violate the Constitution just because a Court can conceive of viable alternatives. "[I]nterference by the federal judiciary with the internal operations of these institutions should be minimized. . . . [T]here certainly is no reason to think judges or juries are better qualified than appropriate professionals in making such decisions." *Youngberg*, 457 U.S. at 322–23. That is particularly so for detainees with a proven history of "sexually violent behavior and a present mental condition that creates a likelihood of such conduct in the future." *Hendricks*, 521 U.S. at 357. The complaint's allegations do not permit the Court to infer that the Defendants' sex offender treatment program—i.e., one that contemplates treatment outside the state hospital in compliance with the terms of a state court order—has no constitutional applications whatsoever.

Next, interpreting Plaintiff's claim as an as-applied challenge, the Court must decide whether Defendants have deprived him of a "realistic opportunity to be cured or to improve his . . . mental condition" by declining to temporarily release him for treatment outside the state hospital on day passes. *Ohlinger*, 652 F.2d at 778 (quoting *Wyatt*, 325 F. Supp. at 784). Plaintiffs' allegations, again assumed true, do not "plausibly give rise to an entitlement to relief" in this respect, either. *Iqbal*, 556 U.S. at 679. Under the alleged terms of the California SVPA statute and the state hospital's sex offender treatment program, Plaintiff can receive treatment outside the state hospital when a court finds he will not "be a danger to the health and safety of others" because it is not "likely that [he] will engage in sexually violent criminal behavior due to [his] diagnosed mental disorder if under supervision and treatment in the community." Cal. Welf. & Inst. Code § 6608(g). And in Plaintiffs case, because state officials have found "conditional release to a less restrictive alternative is in [his] best interest" and that "conditions can be imposed that would adequately protect the community," then the burden will be on "the state to show, by a preponderance of the evidence, that conditional release is not appropriate." *Id.* No allegations in Plaintiff's complaint show he lacks any realistic opportunity to satisfy this statutory burden in a future state court proceeding. Only if this Court assumes that state courts will find he *does* pose a danger for the foreseeable future could Plaintiff show he will not receive treatment outside the state hospital. He makes no such allegation.

1  The state court's denial of Plaintiff's conditional petition poses a second, similar obstacle to his success on an as-applied constitutional claim in this Court. "Federal courts must give state court judgments the same preclusive effect as they would be given by the courts of that state." *United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008). And California courts enforce the doctrine known as "issue preclusion" or "collateral estoppel" to prevent duplicative relitigation of specific issues. *See In re Cantrell*, 329 F.3d 1119, 1123 (9th Cir. 2003). Under this doctrine, a plaintiff cannot relitigate an issue if five conditions are met: (1) the issue is "identical to that decided in a former proceeding," (2) it was "actually litigated in the former proceeding," (3) it was "necessarily decided in the former proceeding," (4) The previous decision was "final and on the merits," and (5) "the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." *Id.* (applying California law and quoting *Harmon v. Kobrin* (*In re Harmon*), 250 F.3d 1240, 1245 (9th Cir. 2001)).

This doctrine would give the state court's judgment a preclusive effect in Plaintiff's case. In the terms of the state's Welfare and Institutions Code, the state court decided Plaintiff "would be a danger to the health and safety of others in that it is likely [he] will engage in sexually violent criminal behavior due to [his] diagnosed mental disorder," even "if under supervision and treatment in the community." Cal. Welf. & Inst. Code § 6608(g). Plaintiff could not prevail in this case without proving his contrary allegation: that he can receive treatment in the community without posing a danger if he is properly supervised. (*See, e.g.*, Doc. 7 ¶ 22.) The issue is identical. It was also decided finally, necessarily, and on the merits in the state court following an appeal, and Plaintiff was without question a party in those proceedings.

In sum, the amended complaint does not state a claim based on a denial of medical treatment, neither on a facial nor an as-applied basis. Plaintiff has had only one opportunity to amend his complaint, and the magistrate judge's previous orders relied on different reasoning than that above. Plaintiff's treatment claim is therefore dismissed with leave to amend. *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) ("Unless it is absolutely clear that no amendment can cure the defect . . . , a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action.").

**CONCLUSION**

For these reasons, the Court **ORDERS**:

1. The Findings and Recommendations issued on October 11, 2023 (Doc. 11) are **ADOPTED IN PART** as explained above.

2. Plaintiff's claim that Defendants violated his Fourteenth Amendment right to have access to mental health treatment (claim one of the First Amended Complaint) is **DISMISSED WITH LEAVE TO AMEND**.

3. Any further amended complaint must be filed within sixty days of the day Plaintiff receives service of this order. If plaintiff does not file a further amended complaint by that deadline, this case will proceed on the First Amendment Complaint (Doc. 7), solely on Plaintiff's claim that Defendants violated his Fourteenth Amendment right to be free from punishment because Plaintiff's conditions of confinement are the same or more restrictive than those of prison inmates (claim two of the First Amended Complaint).

4. The matter is referred to the magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated: __January 9, 2026__                                 /s/ Jennifer L. Thurston
                                                                     UNITED STATES DISTRICT JUDGE