UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY REDDING,<br>Plaintiff,<br>v.<br>CLANDENIN, *et al.*<br>Defendants. | No. 1:22-cv-01234-JLT-EPG (PC)<br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING DEFENDANTS' MOTION TO DISMISS BE DENIED<br>(ECF No. 25)<br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS |

## I. INTRODUCTION

Plaintiff Billy Redding is a civil detainee proceeding *pro se* and *in forma pauperis* in this civil rights action filed under 42 U.S.C § 1983. Plaintiff is currently detained under the Sexually Violent Predatory Act ("SVPA"). Plaintiff alleges the Director of Department of State Hospitals, Stephanie Clendenin, and the Director of Coalinga State Hospital, Brandon Price, violated his civil rights. (Doc. 7.) Plaintiff names Defendants in their official capacities and seeks injunctive relief, challenging policies related to the DSH-Coalinga sex offender treatment program and conditions of his civil detention under the Fourteenth Amendment Due Process Clause. (*Id.*)

Now before the Court is Defendants' motion to dismiss Plaintiff's first amended complaint. (ECF No. 25). Defendants argue that "Eleventh Amendment immunity bars Plaintiff's claim against Defendants, that Plaintiff fails to establish Article III standing for this Court's jurisdiction, and the amended complaint otherwise fails to state any cause of action upon which relief may be granted." (ECF No. 25 at 6).

For the reasons set forth below, the Court will recommend that Defendants' motion to

dismiss be denied.

## II. BACKGROUND

The action proceeds with Plaintiff's first amended complaint, filed on February 27, 2023. (ECF No. 7). Plaintiff sues Stephanie Clandenin, the Director of the Department of State Hospitals, and Brandon Price, the Executive Director of DSH Coalinga. Both defendants are sued in their official capacity only. (*Id.*).

Plaintiff alleges that he is a patient at the California Department of State Hospital-Coalinga ("DSH-C") and is being held as a civil detainee pursuant to the Sexually Violent Predator Act ("SVPA") under California Welfare and Institutions Code section 6600(a)(1). As previously summarized by the Court (ECF No. 11):

> On or about June 18, 2006, Plaintiff began the DSH's "Sex Offender Treatment Program" ("SOTP").
>
> In order for a civilly committed SVPA detainee to reach SOTP Module 4, the DSH Coalinga Medical Director, the DSH Coalinga Chief of Psychology, the Director of the SOTP (i.e., the most senior treatment supervisors within the facility), and a representative of the DSH's Conditional Release Program ("CONREP") are required to conduct a thorough assessment of the detainee. Said assessment includes, but is not limited to, reviewing the SVPA detainee's mental health charts, consulting with his treatment providers, reviewing his treatment work, and interviewing said detainee. For the SVPA detainee to successfully be advanced to SOTP Module 4, these supervisors must unanimously deem the SVPA detainee suitable for "community reintegration."
>
> On or about September 23, 2020, the DSH Coalinga Medical Director, the DSH Coalinga Chief of Psychology, the Director of the SOTP, and a representative of the DSH's CONREP unanimously deemed Plaintiff to be suitable for advancement to "Module 4: Conditional Release through the Liberty Conditional Release Program (CONREP)" of the DSH's SOTP.
>
> ….
>
> Defendants Clandenin and Price have deemed that DSH Coalinga's restrictive conditions of confinement are required to manage those SVPA detainees who, unlike Plaintiff, have not been rehabilitated sufficiently to have completed the inpatient SVPA treatment program. Such restrictive conditions include, but are not limited to: detainees being prohibited from possessing cellphones, which is a restriction that is identical to that experienced by California Department of Corrections and Rehabilitation ("CDCR") prisoners; detainees being prohibited from possessing personal computers, which is a restriction that is identical to that experienced by CDCR prisoners; detainees being prohibited from having any access to the internet, which is a restriction that is more restrictive than that experienced by CDCR prisoners and California's federal prisoners who are permitted limited internet access; detainees being prohibited from possessing any devices capable of accessing the internet, which is a restriction that is more restrictive than

> that experienced by CDCR prisoners who are permitted tablets that have internet access; detainees being prohibited from having "Day Passes" wherein they are able to leave the DSH facility grounds, either with or without supervision, during the day, which is a restriction that is identical to that experienced by CDCR prisoners; detainees being prohibited from possessing their own vitamins and medication, which is a restriction that is more restrictive than that experienced by CDCR prisoners, who are permitted to purchase vitamins and to have "keep on person" medications; detainees being prohibited from having privacy, a restriction that is identical to that experienced by CDCR prisoners; detainees being prohibited from having adequate access to law library material, which is a restriction that is identical to that experienced by CDCR prisoners and more restrictive than that experienced by California's federal prisoners; and detainees being prohibited from having a personal television with either cable or satellite television access, a restriction that is more restrictive than that experienced by CDCR prisoners. Defendants are aware, or should be aware, that the Fourteenth Amendment prohibits Plaintiff from being subjected to punishment while in their custody.
>
> Defendants are aware, or should be aware, that even if the highly restrictive conditions described by Plaintiff may have been rational prior to Plaintiff having been deemed by DSH to be rehabilitated, none of those highly restrictive conditions are currently appropriate for Plaintiff now that he has reached SOTP Module 4. Defendants play a significant role in administering the DSH SOTP. Specifically, Defendants are aware, or should be aware, that none of the restrictive conditions exist, and are thus deemed necessary, within DSH's SVPA conditional release program administered by Defendant Clandenin.
>
> Defendants are aware, or should be aware, that not one SVPA detainee who has ever been released into the SVPA CONREP outpatient treatment program has ever been convicted of a sexually violent offense subsequent to being released into the program.
>
> Defendants are aware, or should be aware, that transitional housing within the secure boundaries of the DSH, with conditions that mirror those afforded to SVPA DSH outpatients and thus include none of the prison-like conditions described by Plaintiff, would be a reasonable and less harsh method of confining Plaintiff while he awaits court-ordered release. The state provides DSH with over $240,000 per year for the care of Plaintiff, and for a small fraction of funds the DSH could: provide a small inexpensive mobile home on DSH property for Plaintiff to live in; install a GPS ankle bracelet on Plaintiff; have Plaintiff's ankle bracelet monitored; have DSH psychiatric technicians communicate with Plaintiff's employers and otherwise supervise Plaintiff during his Day Passes; have cable or satellite television installed for Plaintiff's use; provide Plaintiff with access to the DSH's internet provider; provide Plaintiff with home appliances; and otherwise provide for Plaintiff to live a normal life with the exception of his residing on DSH grounds, and subject to conditions of supervision that are not excessively restrictive.

(*Id.* at 4-5; 7-9).

On October 11, 2023, this Court issued Findings and Recommendation to the District Judge that "this action should proceed on Plaintiff's Fourteenth Amendment conditions of

confinement claim against Defendants Clandenin and Price. The Court also finds that all other claims should be dismissed." (ECF No. 11 at 16). The District Judge, Jennifer L. Thurston, reviewed Plaintiff's objections to the screening order and issued a lengthy order adopting in part, giving Plaintiff leave to file an amended complaint, and stating that "[i]f plaintiff does not file a further amended complaint by that deadline, this case will proceed on the First Amendment Complaint (Doc. 7), solely on Plaintiff's claim that Defendants violated his Fourteenth Amendment right to be free from punishment because Plaintiff's conditions of confinement are the same or more restrictive than those of prison inmates (claim two of the First Amended Complaint)." (ECF No. 14 at 11).

After Plaintiff failed to file an amended complaint, on March 24, 2026, the Court ordered service of the complaint on Defendants Clandenin and Price for violation of Plaintiff's Fourteenth Amendment Right to be Free from Punishment and summons were issued. (ECF Nos. 20, 21). The summons were returned executed and Defendants filed the motion to dismiss on July 2, 2026. (ECF Nos. 24, 25). Plaintiff filed an opposition on July 24, 2026, and Defendants filed a reply on July 27, 2026. (ECF Nos. 27, 28).

**III. DEFENDANTS' MOTION TO DISMISS**

Defendants' motion seeks dismissal of Plaintiff's sole claim based on immunity under the Eleventh Amendment and a lack of Article III standing. (ECF No. 25 at 6).

Beginning with Defendants' Eleventh Amendment immunity bar, Defendants argue Plaintiff's claim under 42 U.S.C § 1983 is barred because he sues Defendants in their official capacity, "which is no different than suing the State." (*Id.* at 11). Specifically, Defendants argue that, "DSH is an arm of the state and Defendants are sued in their official capacity as employees of DSH; thus, Defendants are entitled to Eleventh Amendment Immunity." (*Id.*). Additionally, Defendants argue that the *Ex Parte Young* exception to Eleventh Amendment immunity does not apply because "Plaintiff fails to allege a live dispute or actual harm to remedy and thus does not allege a continuing violation of federal law that would entitle him to any declaratory or prospective injunctive relief." (*Id.* at 12).

Next, Defendants argue that Plaintiff's claim is barred because (1) Plaintiff fails to allege

facts demonstrating a live, or ripe, case or controversy, establishing a concrete injury; and (2) he fails to allege that a favorable decision will redress any injury. (*Id.* at 13-14).

In his opposition, Plaintiff argues

> Defendants' motion fails for three independent reasons. First, Eleventh Amendment immunity does not bar claims for prospective relief to end ongoing violations of federal law. Second, Plaintiff has Article III standing because he alleges concrete, present, and particularized injuries: he is currently subjected to the challenged restrictions, denied less restrictive non punitive housing alternatives, and prevented from receiving conditions compatible with his treatment progress. Third, the FAC states a plausible Fourteenth Amendment claim under the standards governing civil detainees: civil confinement may not be punitive, and restrictions that substantially resemble or exceed criminal confinement require a legitimate, non punitive justification tied to the individual and to the purposes of civil detention.

(ECF No. 27 at 2).

In the reply, Defendants do not present any counterarguments to Plaintiff's arguments. Instead, Defendants ask that the Court disregard Plaintiff's opposition because it was filed eight days late. (ECF No. 28).[1]

## IV. LEGAL STANDARDS

### a. Motion to Dismiss

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[T]he court must construe the complaint in the light most favorable to the plaintiff, taking all [of the plaintiff's] allegations as true and drawing all reasonable inferences from the complaint in [the plaintiff's] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

---

[1] In light of Plaintiff's *pro se* status, the Court declines to disregard Plaintiff's opposition based solely on its lack of timeliness.

"Furthermore, Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002) (internal citation and quotation marks omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, a claim must be facially plausible, *i.e.*, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard is not akin to a "probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## V. REQUST FOR JUDICIAL NOTICE

Along with the filing of the motion to dismiss, Defendants filed a "Request for Judicial Notice in Support of Motion to Dismiss First Amended Complaint." (ECF No. 26). Defendants request the Court take judicial notice of (1) webpages printed from the Department of State Hospital Coalinga's website, which contain information about the CONREP program and (2) the Court of Appeal's opinion in *Redding II,* 2023 WL 3577181. (*Id.* at 4-12).

Generally, judicial consideration of evidence beyond the pleadings will convert a motion to dismiss into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also* Fed. R. Civ. P. 12(b)(6) (providing that when "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . ."). This general rule is subject to two exceptions. "First, a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion . . . into a motion for summary judgment." *Lee*, 250 F.3d at 688 (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (internal quotation marks omitted)). "Second, under Fed. R. Evid. 201, a court may take judicial notice of matters of public record." *Lee*, 250 F.3d at 688-689 (quoting *Mack v. South Bay Deer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Federal Sav. and Loan Ass'n v.*

*Solimino*, 501 U.S. 104 (1991) (internal quotation marks omitted)).

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Documents that are part of the public record may be judicially noticed to show, for example, that a judicial proceeding occurred or that a document was filed in another court case, but a court may not take judicial notice of findings of facts from another case. *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 & n.5 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca,* 747 F.3d 1162 (9th Cir. 2014) (*en banc*).

Based on these rules, the Court recommends denying Defendants' request for judicial notice of webpages printed from the Department of State Hospital Coalinga's website, which contain information about the CONREP program. The information contained in those pages is not generally known in the territorial jurisdiction. Moreover, it could be reasonably questioned whether the website accurately describes the program as it is implemented.

However, the Court recommends granting Defendants' request for judicial notice as to the Court of Appeal Opinion in *Redding II*, 2023 WL 3577181, affirming the denial of Plaintiff's petition for conditional release. This document is part of the public record in another court case.

## VI. ANALYSIS

### a. Eleventh Amendment Immunity

Defendants' motion first argues that "Plaintiff's claim under 42 U.S.C. section 1983 is barred by Eleventh Amendment immunity because he sues Defendants in their official capacity, which is no different than suing the State." (ECF No. 25 at 11).

The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state." *Brooks v. Sulphur Springs Valley Elec. Coop.,* 951 F.2d 1050, 1053 (9th Cir. 1991) (*citing Pennhurst State Sch. & Hosp. v. Halderman, 465* U.S. 89, 100 (1984).) Immunity under the Eleventh Amendment includes "suits naming state agencies and departments as defendants and applies whether the relief sought is legal or equitable in nature." *Brooks*, 951 F.2d at 1053 (footnote omitted); *Pennhurst State Sch. & Hosp*., 465 U.S. at 100. Similarly, a suit

against a public employee in his official capacity is equivalent to a claim against the state-agency employer. *Kentucky v. Graham,* U.S. 159, 166 (1985); 473 *Holley v. Cal. Dep't of Corrs*., 599 F.3d 1108, 1111 (9th Cir. 2010); *see also Krainski v. Nevada ex rel. Bd of Regents of Nev. Sys of Higher Educ*., 616 F.3d 963, 967 (9th Cir. 2010) cert. denied, ("Eleventh Amendment immunity also shields state officials from official capacity suits.").

While "[t]he Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an arm of the state, its instrumentalities, or its agencies," an exception exists under *Ex Parte Young*, which does not bar actions seeking only prospective declaratory or injunctive relief against state officers in their official capacities." *Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n. 28 (9th Cir. 2002) (citations and internal quotation marks omitted).

Here, Plaintiff has sued state officials in their official capacities for prospective declaratory or injunctive relief. The suit is thus not barred by Eleventh Amendment immunity.

Indeed, in the District Court's order Adopting the Findings and Recommendations of the screening order, the District Court stated "Plaintiffs may pursue prospective injunctive relief in actions against state officials sued in their official capacity for ongoing violations of federal constitutional law, as Plaintiff does in this case. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (citing *Ex parte Young*, 209 U.S. 123 (1908))." (ECF No. 14 at 6).

Defendants' motion argues nevertheless that immunity applies because "Plaintiff fails to allege a live dispute or actual harm to remedy and thus does not allege a continuing violation of federal law that would entitle him to any declaratory or prospective relief." (ECF No. 25 at 12). However, this argument is not relevant to Eleventh Amendment immunity. The fact remains that Plaintiff has sued state officials in their official capacity for prospective relief. Defendants' arguments about the feasibility of that relief are not relevant to the question of Eleventh Amendment immunity.

**b. Lack of Standing and Subject Matter Jurisdiction**

Defendants next argue that Plaintiff lacks standing because he has failed to allege a live

case or controversy as a result, the Court does not have subject matter jurisdiction. Specifically, Defendants argue that Plaintiff fails to allege a concrete injury and that his claim lacks redressability. (ECF No. 25 at 12-14).

In support, Defendants raise several arguments that do not directly address the question if whether Plaintiff has alleged a concrete injury, such as that "Plaintiff is a post-adjudication detainee convicted on three separate occasions of forcible rape and assaults to commit rape," "Plaintiff is detained at DSH-C with other civil detainees rather than in prison with the general prison population," "Plaintiff does not identify a specific prison from which his allegations stem," "Plaintiff's comparisons between DSH-C and the CDCR 'in general' is based on Plaintiff's own speculation as to the conditions at each and every CDCR facility, is flawed." (*Id.* at 9)

In response, Plaintiff argues that he has suffered a concrete and particularized injury. (ECF No. 27 at 5). Plaintiff argues:

> that he personally is confined under the challenged restrictions now. He alleges that Defendants' policies subject him to conditions identical to, similar to, or more restrictive than prison conditions despite his civil detainee status and treatment progress. Defendants' motion itself summarizes the alleged restrictions: prohibitions on cell phones, personal computers, internet access, internet capable storage devices, private restroom access, private shower and bathroom access, and other restrictions. (Doc. 25 ~ Motion to Dismiss, p. 8)
>
> . . .
>
> Defendants' argument goes to proof and comparators, not pleading sufficiency. The FAC identifies categories of restrictions and alleges they are identical to or more restrictive than CDCR restrictions. Defendants may later contest the accuracy or relevance of those comparisons. But on a motion to dismiss, Plaintiffs allegations must be accepted as true and construed liberally. *See Hebbe,* 627 F.3d at 342.

(*Id.* at 6).

Federal courts are courts of limited jurisdiction and lack inherent or general subject matter jurisdiction. Federal courts can adjudicate only those cases that the United States Constitution and Congress authorize them to adjudicate. *Kokkonen v. Guardian Life Ins. C o.*, 511 U.S. 375 (1994). To proceed in federal court, a plaintiff's pleading must establish the existence of subject matter jurisdiction. Generally, there are two potential bases for federal subject matter jurisdiction: (1) federal question jurisdiction, or (2) diversity jurisdiction.

Standing is necessary for a court's exercise of subject matter jurisdiction and "if a plaintiff

lacks standing, the court lacks subject matter jurisdiction under Article III of the U.S. Constitution." *Rosales v. Dutschke*, 279 F.Supp.3d 1084, 1090 (E.D. Cal. 2017) (citing and quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). Standing involves an inquiry as to "whether the plaintiff has made out a case or controversy between himself and the defendant within the meaning of Art[icle] III by demonstrating a sufficient personal stake in the outcome." *Fleck & Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471 F.3d 1100, 1103 (9th Cir. 2006) (alteration in original) (internal quotation marks omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "Standing is determined by the facts that exist at the time the complaint is filed." *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n. 4 (1992)). Plaintiffs bear the burden of establishing standing. *WildEarth Guardians v. U.S. Dept. of Agriculture*, 795 F.3d 1148, 1154 (9th Cir. 2015). To establish standing, a plaintiff must have suffered an "injury in fact," which is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 505 U.S. at 560.

The Court agrees with Plaintiff that Plaintiff has alleged a live and concrete injury sufficient for standing. As the District Court previously stated, "Plaintiff has alleged facts about the restrictive conditions of his confinement that could support a plausible claim under the Fourteenth Amendment." (ECF No. 14 at 5). Plaintiff's lawsuit challenges the constitutionality of the conditions he is currently experiencing. He has thus alleged sufficient injury to satisfy Article III standing.

Defendants' motion appears to concede that Plaintiff is still subject to the conditions he challenges in this lawsuit. Instead, Defendants argue that Plaintiff fails to allege a concrete injury in fact "because he is not entitled to what he seeks." (ECF No. 25 at 13). Defendants then make several arguments why Plaintiff will be unable to prove a constitutional violation, including that he is detained with other civil detainees rather than in prison with the general prison population, that Plaintiff fails to identify a specific prison for comparison of conditions, that the "record lacks evidence" from which to draw any relevant comparisons between SVPA detainees and criminal custody prisoner, that Plaintiff's comparison with CDCR facilities generally "is flawed." (*Id.* at 14). However, none of these arguments relate to whether Plaintiff has alleged an injury in fact sufficient for Plaintiff to have standing. Instead, these arguments concern the merits of Plaintiff's

claim and whether he will ultimately prevail on that claim. In short, none of Defendants' arguments warrant dismissal of Plaintiff's claim based on lack an injury in fact.

Defendants next argue that Plaintiff lacks standing because he fails to allege that a favorable decision is redressable. (*Id.*).

In analyzing redressability, an asserted constitutional right is assumed to exist. *Julianna v. United States,* 947 F.3d 1159, 1170 (9th Cir. 2020), *citing M.S. v. Brown,* 902 F.3d 1076, 1083 (9th Cir. 2018). However, "not all meritorious legal claims are redressable in federal court." *Id.* To establish Article III redressability, the plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award. *Id.* Redress need not be guaranteed, but it must be more than "merely speculative." *Id.* (quoting *Lujan*, 504 U.S. at 561.)

Here too, Defendants' argument goes to the merits of Plaintiff's claim, rather than whether Plaintiff is seeking a court order that would address the claimed constitutional violation. As the District Court previously held, Plaintiff has stated a claim that "Defendants violated his Fourteenth Amendment right to be free from punishment because Plaintiff's conditions of confinement are the same or more restrictive than those of prison inmates (claim two of the First Amended Complaint)." (ECF No. 14 at 11). Plaintiff's first amended complaint seeks a declaratory judgment that his conditions are unconstitutional and an injunction that Defendants take actions to ensure constitutional conditions. (ECF No. 7 at 17). To the extent Plaintiff prevails in this case, the Court may issue an order addressing the constitutional violation.

Defendants do not argue otherwise. Instead, they argue that Plaintiff has conceded that the conditions are not punitive because "they <u>are</u> appropriate for some SVPA detainees." (ECF No. 25 at 15). Defendants also argue that Plaintiff's "allegations are misleading and provide a false narrative." (ECF No. 25 at 15). They also argue that Plaintiff is not seeking a change in conditions, but conditional release which requires a state court order. But none of these arguments directly address the redressability factors mentioned above.

For these reasons, the Court recommends denying Defendants' motion to dismiss on the basis of redressability, because Plaintiff's complaint has adequately alleged redressability for Article III standing.

\\\

**c. Whether Plaintiff States a Claim**

Finally, Defendants briefly argue that Plaintiff "fails to state facts sufficient to constitute a cause of action upon which relief can be granted." (ECF No. 25 at 16). Defendants argue that "Plaintiff's allegations are false," and that "Plaintiff's petition for conditional release was denied because the state court found that he would continue to pose a danger to the public." (*Id.* at 17). They also argue that "the trial court is not required to allow detainees the utilization of day passes or cable or satellite television even while on conditional release." (*Id.* at 17).

The Court's Findings and Recommendations regarding this claim, which were later adopted by the District Judge, determined that Plaintiff could proceed past screening for the following reasons:

> "[A]n individual detained under civil process—like an individual accused but not convicted of a crime—cannot be subjected to conditions that amount to punishment. Following *Bell*, we have recognized that punitive conditions may be shown (1) where the challenged restrictions are expressly intended to punish, or (2) where the challenged restrictions serve an alternative, non-punitive purpose but are nonetheless excessive in relation to the alternative purpose, or are employed to achieve objectives that could be accomplished in so many alternative and less harsh methods. Legitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility." Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) (citations and internal quotation marks omitted).
>
> Plaintiff alleges that he has completed the inpatient SVPA treatment program, and has reached Module 4 of the SOTP, the Conditional Release through the Liberty Conditional Release Program. However, Plaintiff is still being subjected to the same conditions as detainees who have not been deemed suitable for the Conditional Release Program, and many of these conditions are as restrictive, or more restrictive, than the conditions faced by prisoners. As Plaintiff has been deemed by DSH to be rehabilitated, Defendants are (or should be) aware that the highly restrictive conditions Plaintiff is subjected to are not necessary.

(ECF No. 11 at 15-16).

Defendants' arguments in their motion to dismiss do not call into question the Court's reasoning on this claim. While Defendants argue that Plaintiff is not entitled to specific allowances, they do not refute that Plaintiff has alleged that his conditions are "excessive in relation to the alternative purpose or are employed to achieve objectives that could be

accomplished in so many alternative and less harsh methods." (ECF No. 25 at 17).

## VII. CONCLUSION AND RECOMMENDATION

For the forgoing reasons, the Court recommends that:

1. Defendants' Request for Judicial Notice (ECF No. 26) be GRANTED in part to the extent that the Court may take judicial notice of the Court of Appeal's opinion in *Redding II,* 2023 WL 3577181.
2. Defendants' Motion to Dismiss (ECF No. 25) be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 20, 2026**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE